## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YVONNE B. FOOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 3:2005-459 |
| | ) |
| JO ANNE B. BARNHART, | )    JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 14-17). This Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court will deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 14) and grant the Motion for Summary Judgment filed by the Commissioner of Social Security (Document No. 16).

The Plaintiff protectively filed for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act on February 26, 2004, alleging disability since November 1, 2003, as a result of numerous impairments. R. p. 10. These impairments included lumbar disc disease, anxiety and mood disorders, and depression. *Id.* After the initial denial of her claims, the Plaintiff filed a timely request for a hearing. R. p. 26. On May 18, 2005, a hearing was held in Altoona, Pennsylvania, before Administrative Law Judge Donald M. Graffius ("ALJ"). R.

p. 30. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 34-51. Joseph Bentivegna, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 51-54.

On July 29, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. pp. 10-18. The Appeals Council denied the Plaintiff's request for review on October 18, 2005, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. pp. 4-6. The Plaintiff filed a complaint in this matter on December 19, 2005. Document No. 3. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), filed an answer on March 2, 2006. Document No. 7. The Plaintiff and the Commissioner filed cross-motions for summary judgment on July 7, 2006, and August 7, 2006, respectively. Document Nos. 14 & 16.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really

2

> constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and

deference must be given to the Commissioner's findings unless there is an absence of substantial

evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185,

1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability

Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a

five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step

process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f),

3

416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted; brackets in original).

The ALJ determined that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. p. 17. Proceeding to the second step of the sequential evaluation process, the ALJ concluded that the Plaintiff suffered from degenerative disc disease of the spine, status post carpal tunnel release of both wrists, hepatitis C, bipolar II disorder, and an unspecified panic disorder. *Id.* Although these impairments were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), the ALJ determined that they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

The claimant has the residual functional capacity to perform the physical exertion and non-exertional requirements of work except for work above the sedentary exertional level, work that does not afford the option to sit and stand during the day, work that requires more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling, and climbing, work that requires continuous, rapid, repetitive hand motions known to aggravate carpal tunnel syndrome, such as keyboarding, work that involves the handling, sale, or preparation of food, work that is in the medical field, work that requires more than simple, routine, repetitive tasks, not performed in a production or quota based environment, involving only simple, work-related decisions, and in general, relatively few work place changes, work that requires more than occasional interaction with supervisors and co-workers, and work that does not avoid interaction with the public[.]

R. p. 17. Moving on to the fourth step of the sequential evaluation process, the ALJ concluded that the Plaintiff was unable to perform her past relevant work as a house cleaner, assembly worker, cook,

4

crew/fast food worker, or stitcher. *Id.*

At the time of the ALJ's decision, the Plaintiff was 42 years old, and she had a high school education. R. pp. 17-18. Based on the applicable residual functional capacity and vocational assessments, the ALJ determined that the Plaintiff could work as a television monitor, an inventory clerk, a scales operator, or a distribution clerk. R. p. 16. Mr. Bentivegna's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. p. 53.

In support of her motion for summary judgment, the Plaintiff argues that the ALJ's determination of her residual functional capacity is not supported by substantial evidence. Document No. 15 p. 7. She specifically contends that the ALJ erred in dismissing her subjective allegations of disabling pain. *Id.* pp. 6-7. Apparently, the Plaintiff believes that the ALJ's assessment of her residual functional capacity is inconsistent with her subjective complaints.

The U.S. Court of Appeals for the Third Circuit explained the standard for evaluating a claimant's subjective complaints of pain in *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993):

An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence. While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself. Where medical evidence does support a claimant's complaints of pain, the complaints should then be given great weight and may not be disregarded unless there exists contrary medical evidence.

*Mason*, 994 F.2d at 1067-1068. It is important to note, however, that there is a difference between giving serious *consideration* to a claimant's complaints of pain and finding those complaints to be fully credible. Not all pain is *disabling* for purposes of the Social Security Act. *Burns v. Barnhart*, 312 F.3d 113, 129-130 (3d Cir. 2002). The ultimate credibility determination rests with the ALJ, and the Court's

5

review of that determination is in conformity with the mandate from Congress that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). This Court has no mandate to re-weigh the evidence in this case. As long as the Commissioner's decision is supported by substantial evidence, this Court cannot set that decision aside even if it "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

The Plaintiff's argument is undermined by its general nature. She does not argue that her pain precludes the performance of a specific job-related task. Document No. 15 pp. 6-7. In *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000), the Court of Appeals determined that an ALJ's determination that the claimant could raise his right arm above his shoulder was not supported by substantial evidence. *Sykes*, 228 F.3d at 265. The claimant testified that he could not, and his testimony was not contradicted by countervailing evidence. *Id.* It is one thing for a claimant to establish that his or her pain precludes the performance of such a task, and quite another for a claimant to establish that his or her pain precludes the performance of any substantial gainful activity. The Plaintiff fails to link her subjective complaints of pain with any particular finding regarding her residual functional capacity. Having reviewed the evidence in great detail, the Court is convinced that the ALJ's residual functional capacity assessment properly accounted for all of the Plaintiff's exertional and nonexertional impairments. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). It is worthy of note that the Plaintiff testified that she could easily lift ten pounds, which is consistent with the ALJ's conclusion that she could perform

6

sedentary work.[1]  R. p. 45.

With respect to her complaints of pain, and the supporting medical documentation, the Plaintiff

overlooks another important point. There is "a distinction between the issue of the existence of a

medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d

1233, 1237 (3d Cir. 1983). In his opinion, that ALJ stated:

> [T]he Administrative Law Judge has carefully evaluated the claimant's subjective
> allegations of disabling symptoms, including those of pain, discomfort, depressive
> symptoms and anxiety and panic attacks, in accordance with Social Security
> Regulations 404.1529 and 416.929, and Social Security Ruling 96-7p. However, when
> so evaluated, and when contrasted with the record as a whole, including the findings
> upon physical examination, mental status examination, and diagnostic study, the
> claimant's course of medical treatment, the credible medical opinion evidence of record,
> the claimant's activities of daily living, and the claimant's appearance and demeanor at
> the hearing, her subjective allegations are found to be exaggerated and not fully credible
> to the extent that she alleges to be "disabled" by them, as the following discussion will
> show.

R. pp. 11-12. The dispositive question was not whether the Plaintiff was experiencing pain, but rather

whether the pain that she was experiencing was *disabling*. She contends that the objective medical

evidence confirms "a serious back condition disabling enough to be in the stages of [sic] pre-operational

stages." Document No. 15 p. 7. The presence or absence of a statutory disability, however, is not

determined with reference to the nature of the medical intervention needed to address it. Instead, it is

determined with reference to a claimant's ability or inability to perform specific tasks associated with

specific jobs. *Rivera v. Barnhart*, 239 F.Supp.2d 413, 420 (D.Del. 2002). The Plaintiff does not argue

---

[1]20 C.F.R. § 404.1567(a) provides: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

7

that the ALJ erred in determining that her impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Since she suffers from no listed impairment, she cannot establish the existence of statutory disability merely by showing that she has a *potentially disabling* medical condition. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-120 (3d Cir. 2000). The governing law recognizes that a claimant can establish the existence of a "severe" impairment with relative ease. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004). More is required to obtain benefits under the Social Security Act. The Plaintiff fails to clearly articulate how she believes that the ALJ's assessment of her residual functional capacity conflicts with the evidence contained in the record.

The Court acknowledges that the ALJ made his determination at the fifth step of the sequential evaluation process, and that the Commissioner bears the burden of proof at that step. *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005). A careful review of the record, however, convinces the Court that the Commissioner met her burden. Although Mr. Bentivegna could not identify jobs in the light category which were consistent with the Plaintiff's residual functional capacity, he identified four jobs in the sedentary category. R. p. 53. The ALJ's hypothetical question was very detailed, including all of the Plaintiff's limitations. R. p. 52. It cannot be said that the ALJ failed to adequately convey all of the Plaintiff's limitations to Mr. Bentivegna. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The ALJ not only accounted for the Plaintiff's exertional impairments, but he accounted for her hepatitis C diagnosis by precluding "the handling, sale, or preparation of food and liquor" and her nonexertional impairments by precluding interaction with the public and more than occasional interaction with supervisors and coworkers. R.

8

p. 52. Although Mr. Bentivegna testified that a need for excessive breaks or absences would prevent the Plaintiff from securing gainful employment, the ALJ was entitled to reject that limitation. R. pp. 16, 54. An ALJ's residual functional capacity assessment, and corresponding hypothetical question to the vocational expert, must include only the claimant's *credibly established* limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The ALJ was not required to incorporate every limitation *alleged* by the Plaintiff. *Id.*

The ALJ's determination of the Plaintiff's residual functional capacity, of course, must be supported by substantial evidence in order to be sustained. While the Court's role under 42 U.S.C. § 405(g) is limited, it is not meaningless. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). In the instant case, however, the Court is convinced that the ALJ's conclusion is adequately supported by the record to satisfy the "substantial evidence" standard.

The Court is aware of the form completed on January 8, 2004, by Dr. Henry Shoenthal, the Plaintiff's primary care physician. Dr. Shoenthal opined that the Plaintiff was permanently disabled and, consequently, a candidate for benefits under the Social Security Act. R. p. 163. The ALJ rejected this conclusion on the ground that it was not supported by Dr. Shoenthal's treatment records, "the physical therapy records, the objective findings from an evaluating neurologist, and the claimant's wide range of daily activities[.]" R. p. 14.

The law governing an ALJ's treatment of the opinion of a treating physician is clearly established. "[A] statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). Where there is conflicting medical evidence in the record, it is the responsibility of the ALJ

9

to weigh that evidence, and to come to a logical conclusion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ must consider all of the evidence of record, giving reasons for discounting the evidence that is ultimately rejected.[2] "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). In the present case, it is clear that the ALJ's rejection of Dr. Shoenthal's opinion was within the bounds of his discretion.

In rejecting Dr. Shoenthal's opinion, the ALJ relied on a physical residual functional capacity assessment form completed by Dr. Gerald Gryczko. R. p. 13. On the assessment form, which was completed on May 20, 2004, Dr. Gryczko opined that the Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds,[3] stand or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. R. p. 243. Although Dr. Gryczko found the Plaintiff to be limited to only occasional stooping, he concluded that her pushing and pulling abilities were unlimited, and that she had no manipulative, visual, communicative or environmental limitations.

[2]The Court does not mean to suggest that the ALJ was required to specifically mention every treatment note contained in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001)("Although we do not expect the ALJ to make reference to every treatment note in a case where the claimant, such as Fargnoli, has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

[3]The Court notes that Dr. Gryczko's determination that the Plaintiff could frequently lift or carry ten pounds is consistent with the Plaintiff's own testimony at the hearing. R. p. 45 ("I can carry 10 pounds easy.").

R. pp. 243-246. The ALJ was entitled to rely on Dr. Gryczko's findings, particularly since Dr. Shoenthal's opinion was conclusory and unsupported by the medical evidence. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). An ALJ is required to accept the medical judgment of a treating physician only in the absence of contradictory medical evidence. *Id.* at 128-129. Furthermore, Dr. Shoenthal's opinion was expressed on a standard form, unaccompanied by a meaningful medical analysis. In *Mason*, the Court of Appeals recognized that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason*, 994 F.2d at 1065. "[W]here these so-called reports are unaccompanied by thorough written reports, their reliability is suspect[.]" *Id.* (internal quotation marks omitted).

This principle applies with equal force to the opinion of Dr. Chad Good. On May 20, 2005, Dr. Good reported that the Plaintiff could stand or walk for only one hour in an eight-hour workday, sit for only four hours in an eight-hour workday, and lift no more than ten pounds. R. p. 302. Since Dr. Good's four-hour sitting limitation was not supported by the record, the ALJ was not required to accept it. It is worthy of note that Dr. Good found the Plaintiff to be capable of frequent bending, kneeling, stooping, crouching, balancing and climbing. *Id.* The ALJ's residual functional capacity assessment limited the Plaintiff to only occasional postural activities of this kind, thereby accommodating the Plaintiff's alleged limitations to an even greater degree than that recommended by Dr. Good. R. p. 13.

In his opinion, the ALJ acknowledged that Dr. Gryczko did not examine the Plaintiff. R. p. 13. For this reason, Dr. Gryczko's assessment was not fully adopted by the ALJ. The residual functional capacity assessment ultimately settled on by the ALJ, and reflected in his hypothetical question to Mr. Bentivegna, incorporated several limitations that were not included on Dr. Gryczko's assessment form.

11

R. p. 52. In addition, the ALJ concluded that the Plaintiff was capable of only sedentary work even though Dr. Gryczko found her to be capable of light work.[4] R. p. 13. Thus, it is clear that the opinions of the Plaintiff's treating and examining physicians were not ignored, even though the ALJ chose not to adopt them completely.

In her argument, the Plaintiff places no specific reliance on her nonexertional impairments. Document No. 15 pp. 6-7. That should come as no surprise, since none of the evidence concerning her mental impairments supports a finding of statutory disability. In any event, it is worth noting that Dr. J.J. Kowalski, a state agency medical consultant, found that the Plaintiff's bipolar II and panic disorders resulted in only mild restrictions on the Plaintiff's activities of daily living, mild difficulties in her maintenance of social functioning, mild difficulties in her maintenance of concentration, persistence or pace, and no episodes of decompensation of extended duration. R. p. 233. Furthermore, Dr. Edward Lipski, the Plaintiff's treating psychiatrist, specifically opined that the Plaintiff's mental impairments did not preclude substantial gainful activity. R. pp. 15, 294. On May 24, 2005, Dr. Lipski indicated that the Plaintiff had a "good" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain

---

[4]The Court acknowledges that the adjustment in the ALJ's residual functional capacity assessment may have been due to Mr. Bentivegna's inability to identify jobs in the light range which were consistent with all of the Plaintiff's limitations. R. p. 53. This possibility, however, is inconsequential, since 20 C.F.R. § 404.1567(b) provides: "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Although Dr. Chad Good concluded thatthe Plaintiff could sit for only four hours in an eight-hour workday, the ALJ rejected this limitation as unsupported by the objective record. R. p. 13. Since he did not find this limitation to be credibly established, the ALJ did not have to include it in his residual functional capacity assessment, nor did he have to include it in his hypothetical question to Mr. Bentivegna. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Given the ALJ's decision to reject the Plaintiff's alleged sitting limitation, a determination that she could perform work at the light exertional level  would have established that she could also perform sedentary work.

attention and/or concentration. R. pp. 291-292. He also reported that her impairments resulted in only a slight loss in her ability to make work-related decisions, respond appropriately to usual work conditions, deal with changes in a routine work setting, respond appropriately to supervisors, and respond appropriately to co-workers. R. pp. 293-294. Accordingly, the Plaintiff cannot establish (and does not even appear to argue) that the ALJ failed to properly evaluate the effect of her nonexertional impairments on her residual functional capacity.

The Plaintiff contends that the ALJ placed too much reliance on her daily activities in determining that she was not statutorily disabled. Document No. 15 p. 6 ("The Administrative Law Judge seems to have relied upon the fact that the Claimant was able to go to college, assist her son, do some household chores, care for her personal needs, and drive."). When relatively thin evidence of a claimant's sporadic activities stands in the face of a considerable amount of contrary medical evidence, its reliability is minimal. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)("What we are left with is a rejection of medically credited symptomatology based solely on the administrative law judge's observation of the claimant at the hearing, and claimant's testimony that he took care of his personal needs, performed limited household chores, and occasionally went to church."); *Swope v. Barnhart*, 436 F.3d 1023, 1026, n. 4 (8th Cir. 2006)("In numerous cases we have noted that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.")(internal quotation marks omitted). Nonetheless, when evidence of a claimant's daily activities is consistent with much of the medical evidence in the record, it need not be discounted merely because a treating physician has a different opinion. This is particularly true where, as here, the opinions of the treating physicians are not supported by clinical

13

data. *Newhouse*, 753 F.2d at 286.

Given the mandate from Congress that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive," the Court must affirm the decision of the Commissioner in this case. Accordingly, the Court must deny the Plaintiff's Motion for Summary Judgment (Document No. 14) and grant the Commissioner's Motion for Summary Judgment (Document No. 16).

An appropriate Order follows.

AND NOW, this 25th day of January, 2007, this matter coming before the Court on the parties'

cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for

Summary Judgment (Document No. 14) is DENIED; and 2) the Defendant's Motion for Summary

Judgment (Document No. 16) is GRANTED.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**